**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-10549

PAUL DEBORD,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
For the Northern District of Texas
(3:96-CV-3190-G)

July 10, 1998

Before  POLITZ, Chief Judge, WISDOM, and DUHÉ, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:[1]


Petitioner was convicted of murder and sentenced to ninety-nine years in prison.  He files his first federal habeas application alleging  a <u>Brady</u> violation and ineffective assistance of counsel. We deny the application.  There is no <u>Brady</u> violation because the evidence was not material, and petitioner failed to

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

meet his burden in proving ineffective assistance of counsel.

## I

In 1984, Paul Debord ("Debord") and Robert Harris ("Harris") paid an early morning visit to the hotel where his acquaintances, Harold Finch ("Finch") and Cheryl Knowles ("Knowles") were living. Debord began rifling through Finch's toolbox and then asked Knowles if she had the fifteen dollars she owed him from some drugs she bought from him. Debord told Knowles that she owed twenty-five dollars for being late. At this point Debord's and Knowles' account of the facts diverge. Knowles testified that Finch asked Debord if he always wanted something for nothing, and Debord then walked over to Finch and threatened to pistol-whip him. Debord pulled out a gun, cocked it, and pointed it at Knowles, who began screaming. Debord told her to shut up and walked around to the table where Finch was sitting in a chair. Debord hit Finch with the gun twice, but Finch did not resist or say anything. Debord then raised his arm and brought it down again. Finch put up his arm to protect himself, and Debord shot Finch in the head. Knowles further testified that she did not think that the shooting was accidental.

Debord, on the other hand, testified that the shooting was accidental. He stated that Knowles started cursing him while he was looking through the toolbox. Finch was sitting and did not say anything. Debord started to leave, and Knowles threatened to have

2

someone blow Debord's head off. As a result, Debord came back, pulled out his gun, pointed it at the floor, cocked it, and told Knowles to stop threatening him. Debord and Knowles began cursing each other, and then Finch began saying something. Debord turned around and made a motion as if to hit Finch with the gun. Finch then grabbed Debord's hand and pulled the gun down. Debord tried to pull back, and the gun fired.

Debord was convicted of murder and sentenced to ninety-nine years in prison. His conviction was affirmed on direct appeal, and his four state habeas applications were denied. In this, his first federal habeas application, Debord raised the following points of error: 1) the state trial court erred in admitting testimony regarding extraneous drug offenses; 2) the state trial court erred in failing to charge the jury on a lesser included offense; 3) the prosecutor used prejudicial and inflammatory arguments throughout the guilt/innocence and punishment phases; 4) ineffective assistance of counsel; and 5) a Brady violation. The district court denied habeas relief. On appeal, Debord raises the ineffective assistance of counsel and the Brady violation. All other issues not briefed on appeal are deemed waived. Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994).

## II.

Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d)(1996), a federal court may not issue a writ of

3

habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the adjudication was 1) contrary to or involved an unreasonable application of clearly established federal law; or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Moreover, when the case presents a mixed question of law and fact, a federal court will grant the writ only if "reasonable jurists considering the question would be of one view that the state court proceeding was incorrect." Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled in part on other grounds, Lindh v. Murphy, 117 S. Ct. 2059 (1997).

Finally, we review the district court's findings of fact for clear error and its conclusions of law de novo. Lara v. Johnson, 1998 WL 229794 1, 2 (5th Cir. 1998); Moody v. Johnson, 139 F.3d 477, 480 (5th Cir. 1998).

## III.

### A. BRADY VIOLATION

"Although the State is obligated to disclose evidence to the defense, the State need not disgorge every piece of evidence in its possession." Rector v. Johnson, 120 F.3d 551, 558 (5th Cir. 1997). Rather, under Brady v. Maryland, 373 U.S. 83 (1963), a prosecutor is required to disclose all exculpatory evidence that is material to guilt or punishment. Id. at 87. Suppression of that evidence, irrespective of the prosecutor's good or bad

4

faith, violates due process.

We have held that to state a <u>Brady</u> claim, a defendant must establish that 1) the prosecutor suppressed evidence; 2) the evidence was favorable; 3) the evidence was material to guilt or punishment; and 4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence.  See, <u>Rector</u>, 120 F.3d at 558; <u>Williams v. Scott</u>, 35 F.3d 159, 163 (1994). Further, evidence is material only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

The alleged <u>Brady</u> violation concerns the sworn, transcribed statement Harris made to the police the day of the shooting. Harris told the police that Debord had pointed his pistol at Knowles and then walked over to Finch and pointed the gun at him. Debord told Finch not to say anything about the way in which he was talking to Knowles.  Finch and Debord continued to argue and Debord went to hit Finch with the pistol.  Finch grabbed Debord. They continued to fight and began to fall.  Harris stated that he got out of the way and then heard a shot.  Debord was standing over Finch, who was seated in a chair.

The magistrate found that there was no <u>Brady</u> violation because the information in Harris' statement was known to Debord

5

before trial.  Because Harris accompanied Debord to the hotel, Debord knew what Harris saw and heard that day.  The magistrate further found that, even assuming arguendo that Debord did not have access to the statement before trial, there was still no Brady violation.  Debord was fully aware that Harris had been present at the scene and could have been called as a defense witness.[2]

The magistrate, however, misapprehends the purpose of the statement.  The statement was not valuable to Debord because it contained any information of which he was not aware; rather, the statement was important because it tends to corroborate Debord's contention that the killing was accidental.  Assuming arguendo the statement would have been admitted, the issue is whether the statement constitutes material evidence.  We hold that it does not.

As stated above, a reasonable probability is one that is sufficient to undermine confidence in the outcome.  Bagley, 473 U.S. at 682.  Here, the statement is both inculpatory and exculpatory.  It corroborates Debord's testimony that he did not actually hit Finch, but only went to hit him.  It also corroborates Debord's testimony that Finch grabbed his arm.  Further, it contradicts Knowles' story that Finch was merely an

---

[2]We disagree that Harris could have been called as a witness. The State delayed the trial twice to find Harris and was still unable to locate him.

6

unresisting victim. However, the statement also contradicts Debord's testimony that he did not point the gun at anyone but merely pointed it at the ground.

We cannot say that a jury that heard the statement would not convict Debord. After all, the statement depicts Debord pointing the gun at Finch and then moving towards him to hit him with it. Thus, while the prosecutor probably should have given the statement over to the defense, the statement was not material evidence, and there is no Brady violation.

## B. EFFECTIVE ASSISTANCE OF COUNSEL

Debord claims that his counsel was ineffective because he failed to locate either Harris or Harris' statement to the police. This claim, too, fails.

To assert a successful ineffectiveness claim, Debord must show both that his counsel's performance was constitutionally deficient and that his counsel's ineffectiveness resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to prove either element is fatal to the ineffectiveness claim. Id. To prove the first prong of the Strickland test, the defendant must prove that counsel's representation fell below an objective standard of reasonableness. Id. at 688. In fact, counsel must have made errors so serious that counsel was not functioning as the "counsel" the Sixth Amendment guarantees. Id. at 687.

7

"Our scrutiny of counsel's performance is highly deferential, and we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Pitts v. Anderson, 122 F.3d 275, 279 (5th Cir. 1997). Debord merely complains that counsel failed to find Harris or his statement to the police, and that as a result, counsel failed to represent him adequately. Such a complaint is a conclusion of law and does not satisfy Debord's heavy burden. Debord fails to explain to this Court what steps counsel did take, and there is no adequate basis upon which we may judge his performance; therefore, we affirm the district court's dismissal of Debord's ineffective assistance of counsel claim.

## CONCLUSION

Based on the foregoing reasons, we DENY the petitioner's WRIT OF HABEAS CORPUS.